468

(No. 4695- )

A. L. MECHLING BARGE LINES, INC., A CORPORATION, Claimant, vs.
STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1957.*

BRADLEY, PIPIN, VETTER AND EATON, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; BERNARD GENIS, Assistant Attorney General, for Respondent.

WHAM, J.

Claimant, A. L. Mechling Barge Lines, Inc., brings this action to recover the sum of $493.88 from the State of Illinois, contending that on August 9, 1955, its tow boat, Roy Mechling, was damaged in that amount while passing under the Jefferson Street draw bridge, which crosses the Illinois Waterway in the City of Joliet, due to the negligent lowering of the bridge onto a portion of the tow boat by the state employed bridge tender.

The facts established by the evidence are as follows:

Roy L. Graffis, Captain and Pilot of the tow boat, testified on behalf of claimant that at 1:50 A. M., on August 9, 1955, the boat, 110 feet long, was proceeding upstream in the Illinois Waterway in Joliet, Illinois, pushing a tow of barges 575 feet in length; that, when he was approximately one-half mile from the Jefferson Street bridge, he gave the customary signal used in notifying the bridge tender to open the drawbridge, and received a response, consisting of flashing green lights, authorizing him to proceed. The bridge was raised, and

the tow boat and barges proceeded under the bridge at one and one-half miles per hour; when the tow boat was directly under the bridge, it began lowering, and, despite danger signal blasts sounded by the boat's whistle, continued its descent, striking the boat.

The boat's radio antenna, stern mast, signal light, canvass awning, framework, and the boom, which was used to lift and lower small boats, were damaged.

After this incident, the tow boat continued on 100 to 150 feet beyond the bridge, and stopped. Mr. Graffis testified that this was the first time the vessel stopped, and that it did not stop under the bridge.

The next morning the vessel was taken to the Mechling Dock at Joliet where John Grodzicki, Superintendent of the Joliet Marine Supply and Repair Company, and Harold Mechling, Manager of claimant company, and a Mr. H. B. Belfort, Assistant Engineer of the Illinois Division of Waterways, inspected the damaged vessel. An estimate as to the cost of repair was prepared at that time.

The respondent offered as an occurence witness, the bridge tender, John Brown, 73 years of age, who was employed by the State of Illinois. He testified that he opened the bridge on the morning in question for claimant's boat to pass, and, when the rear of the boat was approximately one-half through, he started lowering the bridge, and lost sight of the boat. He testified he heard no blasts from the boat after starting to lower the bridge. On cross-examination, he testified that the regulations or rules received from his supervisors stated that "it should be clear of the barge . . . when you lower the bridge". He first heard about the bridge striking the boat when one of

the boat's crew members came to the bridge, and told him about it shortly after the occurrence.

These two witnesses were the only occurrence witnesses offered by either side, and, from their testimony, it appears to us that the bridge tender should have made more of an effort to determine that the boat had cleared before lowering the bridge. We do not believe that the evidence establishes any fact or circumstance, which would indicate any lack of due care upon the part of claimant. Respondent's brief and argument is silent upon the question of liability.

After considering the record in this case, we find that respondent negligently caused damage to claimant's boat, that claimant was in the exercise of due care for the safety of its property, and should recover in this case the amount of its damages.

The only evidence on the question of damages were the depositions of Donald Daoust, office manager of the A. L. Mechling Barge Lines, and John Grodzicki, Superintendent of the Joliet Marine Supply and Repair Service. Their testimony contained in the deposition established that the boat damage was repaired by the Joliet Marine Supply and Repair Service; that an invoice was rendered for such service to claimant in the amount of $493.88, and was paid by claimant; and that the charge for such repair services was reasonable and proper.

The only objection raised by respondent in its brief is that the notice of the taking of the depositions, which was served upon the Attorney General, did not specify that the depositions were to be offered in evidence, and, therefore, under Supreme Court Rule 19, they were presumed to be discovery depositions, and could not be admitted into evidence.

We believe respondent's position is not well taken. The notice of the taking of the depositions was received by respondent on March 28, 1956. The depositions were taken April 3, 1956, over two months prior to the hearing, which was held on June 9, 1956. The Attorney General saw fit not to appear at the taking of the depositions. These depositions were duly filed with the Clerk of the Court on the 20th day of April, 1956.

It apeared from the face of the depositions filed that they were taken "pursuant to Section 58 of the Civil Practice Act, and Rule 19 of the Supreme Court Rules pertaining to the taking of depositions for use in evidence", and, that "notice of the taking of the depositions was given and acknowledged by respondent's attorney, Bernard Genis, on March 28, 1956, in accordance with the Rules of the Civil Practice Act and the Supreme Court. Claimant was advised by respondent's attorney, Bernard Genis, of his intention not to be present at the taking of the deposition."

The sworn statement of the Commissioner before whom the depositions were taken also stated "that the deposition has been signed and sealed, by me for the purpose of sending same to the Clerk of the Court of Claims, and to remain for use in evidence".

On April 25, 1956, copies of the depositions were forwarded to the Attorney General by the Clerk of the Court of Claims, which date was approximately forty days prior to the hearing in the cause. No objection to, nor motion to suppress these depositions were filed, or called to the attention of the Court prior to the hearing of the cause. The only objection appearing in the record was made at the time the depositions were offered by claimant. This objection was as follows:

"Mr. Genis: To which I object.
The Commissioner: Upon what ground?
Mr. Genis: That neither the notice, nor the taking of the depositions, nor the filing of same were pursuant to the statutes and decisions of the State of Illinois."

Upon being requested by claimant's attorney to specify the ground of the objection, the Attorney General replied as follows:

"Mr. Genis: The grounds of the objection, if any, I will file in my brief."

The objection was then overruled, and the depositions admitted into evidence by the Commissioner. It is obvious that respondent knew at least forty days prior to the hearing that the depositions were to be taken for evidential purposes. If respondent wished to question any error or irregularity in the notice served upon it, objections in writing should have been promptly served upon claimant pursuant to Rule 19-9(1) of the Rules of the Supreme Court, which reads as follows:

"(1) As to Notice.
All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice."

If respondent wished to question any error or irregularity in the taking or filing of the depositions, a motion to suppress should have been filed pursuant to Supreme Court Rule 19-9(4), which reads as follows:

"(4) As to Completion and Return of Deposition.
Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, endorsed, transmitted, filed, or otherwise dealt with by the officer are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after the defect is, or with due diligence might have been, ascertained."

It has long been and still is the rule in this state that if an objection to a deposition could have been obviated

by issuing a new commission and re-examining the deponent, a motion to suppress must be made prior to trial in order to preserve the question. (See Joint Committee Comments on Supreme Court Rule 19-9, Smith-Hurd Ill. Ann. Stats., Chap. 110, Sec. 101.19-9.

In our judgment, respondent should have moved to suppress these depositions when it became apprised of the fact that they were taken for use as evidence and not merely for discovery.

Furthermore, the very nature of the objection itself is not sufficient under the law to properly preserve the point respondent now relies upon. The objection was so general in nature that under the law it raised only the question of relevancy.

In *Buntain* vs. *Bailey*, 27 Ill. 409, Justice Breese set forth the then well established rule, which is still followed, on the effect of a general objection. At page 410, the court stated:

"This court has so frequently decided that general objections to the instrument of evidence will not be entertained, that it is unnecessary, in this case, to do more than refer to the decisions. To go no further back, the case of *Sargeant* vs. *Kellogg, Et Al*, 5 Gilm. 281, is understood to hold, that a general objection to the introduction of a certain instrument of evidence simply raises the question of its relevancy. But if it is obnoxious to a special objection, that objection must be stated. When various objections may be made to evidence, some of which may be removed by other proof, the party making the objection ought to point out specifically those he insists on, and thereby put the adverse party on his guard, and afford him an opportunity to obviate them. He ought not to be permitted, after interposing a general objection, to insist on particular objections in this court, which, if ever suggested in the court below, might have been instantly removed."

See also *C. & E.I. Railroad Company* vs. *Wallis*, 202 Ill. 129 at 132 and 133.

The question of the competency of the depositions was never properly raised. Obviously, the evidence con-

474

tained in the depositions was relevant to the question of damages.

Respondent chose not to specify the ground of his objection, even though requested to do so, until the briefs were filed.

Therefore, no opportunity was given claimant to either call other witnesses, or request a continuance for re-taking of depositions.

We, therefore, hold that respondent waived all questions regarding the sufficiency of the notice, the taking and filing of the depositions, and the depositions were properly admitted into evidence.

The claim should, therefore, be allowed in the sum of $493.88.